**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON FORMERLY KNOWN AS THE BANK OF NEW YORK AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE, f/k/a BANK ONE, NATIONAL ASSOCIATION AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENT, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-AR5, | ) | |
| Plaintiff, | ) | Civil Action File No. |
| v. | ) | |
| LINDA MCMAHON, in her Official Capacity as Administrator of the UNITED STATES SMALL BUSINESS ADMINISTRATION, | ) | |
| Defendant. | ) | |

**<u>COMPLAINT</u>**
**I. ACTION FOR EQUITABLE SUBROGATION**
**II. ACTION FOR EQUITABLE LIEN**
**III. ACTION FOR DECLARATORY JUDGMENT**
**IV. CONTINGENT ACTION REGARDING EXCESS PROCEEDS FROM FORECLOSURE SALE**

Plaintiff, The Bank of New York Mellon formerly known as The Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee, f/k/a Bank One, National Association as Trustee for Structured Asset Mortgage Investment, Inc. Mortgage Pass-Through Certificates, Series 2002-AR5 ("Plaintiff" or "BONYM 2002-AR5"), files this Complaint and states as follows:

**JURISDICTION AND VENUE**

1.

BONYM 2002-AR5 is a New York chartered bank with a principal place of business in New York.

2.

Linda McMahon, in her official capacity as Administrator of the United States Small Business Administration ("SBA"), is a federal officer sued in her official capacity in accordance with 15 U.S.C. § 634(b)(1). The Administrator of the SBA may be served with process at her office, the Central Office of the SBA, at 409 Third Street, S.W., Washington, D.C. 20416 (in accordance Fed. R. Civ. P. 4(i)(2)(A)), and additionally by serving the U.S. Attorney for the Northern District of Georgia, and the U.S. Attorney General in Washington, D.C. (in accordance with Fed. R. Civ. P. 4(i)(1)(A), (1)(B), and (2)(A)).

3.

As to Counts I-III, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(f), which provides District Court jurisdiction over cases brought under 28 U.S.C. § 2409a to adjudicate a disputed title to real property under which the United States claims an interest. As shown in greater detail below, SBA claims a title to real property addressed at 1824 Tilling Way, Stone Mountain, DeKalb County, Georgia 30087, and its claim to title is based on a Deed Under Power of Sale recorded in Deed Book 24868, page 729, DeKalb County, Georgia records. As shown in greater detail below, BONYM 2002-AR5 claims an interest in the same property of a higher priority than that of SBA based on equitable subrogation or the imposition and foreclosure of an equitable lien. BONYM 2002-AR5's

claim is based on its assignor's closing of what was intended to be a first priority mortgage loan and security deed on November 15, 2002, without knowledge that the borrowers, Robert R.J. Kadrie and Sandra R.H. Kadrie (the "Kadries"), had given a security deed to SBA 14 days earlier, and with proceeds from such November 15, 2002 closing being used to pay off and satisfy two encumbrances which predated and had a higher priority than SBA's security deed – a security deed to Chase Manhattan Mortgage Corporation recorded in Deed Book 12631, page 344, DeKalb County, Georgia records, and the remaining installment of the 2002 ad valorem taxes on the property. Count III seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. In addition, as to Counts I-III, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 634(b)(1), which provides subject matter jurisdiction in actions brought against the Administrator of SBA in this Court or in a state court having general jurisdiction. Alternatively, as Counts I-III involve, at least in part, SBA's security deed recorded in Deed Book 13834, page 62, DeKalb County, Georgia records, this Court may also have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2410(a), as an action to "quiet title" to real property on which the United States claims a mortgage or other lien. SBA has expressly waived its sovereign immunity as to Counts I-III pursuant to 28 U.S.C. § 2409a and 15 U.S.C. § 634(b)(1), and likely also pursuant to 28 U.S.C. § 2410(a).

4.

Count IV is a purely alternative claim for excess proceeds from the SBA's foreclosure sale, generated because the SBA acquired the property at issue with a high bid of $136,600.00, but the outstanding indebtedness owed to SBA was a calculable sum which, upon knowledge, information and belief, was approximately $50,000.00. This Court has subject matter jurisdiction over Count IV of this action pursuant to 15 U.S.C. § 634(b)(1), which provides subject matter jurisdiction in actions brought against the Administrator of SBA in this Court or in a state court having general jurisdiction "without regard to the amount in controversy." In addition, this Court has subject matter jurisdiction over Count IV of this action pursuant to 28 U.S.C. § 1361 as an action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff. SBA has expressly waived is sovereign immunity as to Count IV under 15 U.S.C. § 634(b)(1), 28 U.S.C. § 1361, and 5 U.S.C. § 702 (as a review of agency action as defined in 5 U.S.C. § 551(10)(B),(D), (11)(A), (13)).

5. .

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e)(1)(B) and 1402(d) because the property at issue in this case is located in DeKalb County, Georgia, and the foreclosure sale generating the excess proceeds was conducted in DeKalb County, Georgia.

6.

This Court has personal jurisdiction over the Defendant.

**FACTS**

7.

The property at issue is real property addressed at 1824 Tilling Way, Stone Mountain, DeKalb County, Georgia 30087 (the "Property"). A genuine copy of the property description of the Property is attached as Exhibit "1."

8.

This Complaint seeks relief as to and against the Property only, and alternatively against the excess proceeds from SBA's foreclosure of the Property if (and only if) BONYM Trustee 2002-AR5 cannot recover on its claims regarding the Property.

9.

On and prior to September 20, 2001, the Kadries owned the Property by virtue of a Warranty Deed from Mary J. and Paul G. Brostrom, dated January 31, 2001, and recorded in Deed Book 11893, page 237, DeKalb County, Georgia records. A genuine copy of this Warranty Deed is attached as Exhibit "2."

10.

Prior to September 20, 2001, the Property was subject to two security deeds: (1) from Robert R.J. Kadrie and Sandra R.H. Kadrie to Chase Manhattan Mortgage Corporation in the principal amount of $224,000.00, dated January 31, 2001 and recorded in Deed Book 11893,

page 238, DeKalb County, Georgia records; and (2) from Robert Kadrie and Sandra Kadrie to Chase Manhattan Bank USA, N.A. in the principal amount of $42,000.00, dated January 31, 2001 and recorded in Deed Book 11893, page 255, DeKalb County, Georgia records. Genuine copies of these security deeds are attached as Exhibits "3" and "4."

11.

On September 20, 2001, the Kadries refinanced, giving the following two security deeds: (1) a $273,741.00 security deed to Chase Manhattan Mortgage Corporation, which was recorded in Deed Book 12631, page 344, DeKalb County, Georgia records (the "9/20/01 CMMC Mortgage Loan and Security Deed"); and (2) a $50,000.00 security deed to Chase Manhattan Bank USA, N.A., which was recorded in Deed book 12631, page 361, DeKalb County, Georgia records (the "9/20/01 CMB Mortgage Loan and Security Deed." Genuine copies of these security deeds are attached as Exhibits "5" and "6," respectively.

12.

Very soon thereafter, on October 26, 2001, the Kadries gave an open end security deed with an $87,200.00 maximum principal amount to First Union National Bank, which was recorded in Deed Book 12625, page 194, DeKalb County, Georgia records (the "First Union Mortgage Loan and Security Deed"), a genuine copy of which is attached as Exhibit "7." Although it appears that the First Union Security Deed was recorded before the 9/20/01 Security Deeds, express language in the First Union Security Deed indicates First Union's knowledge of the

prior 9/20/01 Mortgage Loans, and that the First Union Security Deed was subordinate to the 9/20/01 Mortgage Loans.

13.

Upon knowledge, information and belief, funds from the closing of the 9/20/01 CMMC (and CMB) Mortgage Loans were used to pay off and satisfy the two prior security deeds on the Property (Exhibits "3" and "4"), and both were canceled of record. Genuine copies of these cancellations are attached in Exhibits "8" and "9," respectively.

14.

On November 15, 2002, the Kadries refinanced again, this time giving a $302,000.00 security deed to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Southstar Funding LLC ("Southstar"), which was recorded in Deed Book 13914, page 456, DeKalb County, Georgia records (the "Southstar Security Deed"), and a genuine copy is attached as Exhibit "10."

15.

It was an absolute condition to the closing of the mortgage loan from Southstar that MERS and Southstar (and their successors and assigns) obtain a first priority security instrument such as to render MERS and Southstar and their successors and assigns in a first lien priority position encumbering the entirety of the Property after the closing. Southstar instructed the closing agent (the "Closing Agent"), that Southstar and MERS must be given a first priority security interest encumbering the Property.

16.

Upon knowledge, information and belief, a title search on the Property in the DeKalb County records disclosed the existence of the first priority 9/20/01 CMMC Security Deed, the second priority 9/20/01 CMB Security Deed, and the third priority First Union Security Deed. A preclosing tax search on the Property also reflected 2002 County ad valorem tax liability.

17.

Upon knowledge, information and belief, the 9/20/01 CMB Mortgage Loan already showed a zero balance. Southstar instructed that the first priority 9/20/01 CMMC Mortgage Loan and Security Deed must be satisfied and canceled of record, that the second priority CMB Mortgage Loan and Security Deed must be satisfied or otherwise canceled of record, and that the First Union Security Deed must must be subordinated to the new Southstar Mortgage Loan and Security Deed. These instructions were consistent with the requirement that MERS and Southstar (and their successors and assigns) must be placed in a first priority lien position encumbering the Property.

18.

Upon knowledge, information and belief, shortly before the closing of the Soutstar Mortgage Loan, Southstar transmitted to Chase Manhattan Mortgage Corporation or others a request for a payoff quote for the 9/20/01 CMMC Security Deed.

19.

At the closing of the new mortgage loan from Southstar to the Kadries, the HUD-1 Settlement Statement reflected that $273,829.41 of the loan proceeds were distributed to pay off the 9/20/01 CMMC Security Deed. The HUD-1 Settlement Statement also reflected that $1,227.49 of the loan proceeds were distributed to pay off the remaining 2002 ad valorem tax liability on the Property. The HUD-1 Settlement Statement also reflected that $14,548.00 of the loan proceeds were distributed to pay Keybank, which had previously made a home improvement loan in connection with the Property. A genuine copy of the HUD-1 Settlement Statement is attached as Exhibit "11."

20.

As a result of the $273,829.41 payment outlined in ¶ 19, the 9/20/01 CMMC Security Deed was canceled of record in Deed Book 14143, page 186, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "12." As a result of the $1,227.49 payment, the remaining 2002 ad valorem tax liability on the Property was discharged. Thereafter, the 9/20/01 CMB Mortgage Loan and Security Deed, which had been shown as having a zero balance before this closing, was canceled of record in Deed Book 16352, page 683, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "13."

21.

Also as part of the November 15, 2002 closing, the First Union

Security Deed was subordinated to the new Southstar Mortgage Loan and Security Deed in Deed Book 13914, page 454, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "14."

22.

Unbeknownst to MERS, Southstar, and their Closing Agent at the time of the November 15, 2002 Closing, the Kadries had just closed on a $172,500.00 loan from SBA 14 days earlier, giving a $172,500.00 Security Deed to SBA on November 1, 2002. This security deed to SBA was filed for recording on November 14, 2002 – the day before the Kadries' closing with Southstar – and was not available for review on the public records by the time of the November 15, 2002 Closing. The security deed to SBA was ultimately recorded in Deed Book 13834, page 62, DeKalb County, Georgia records (the "SBA Security Deed"), and a genuine copy is attached as Exhibit "15."

23.

The Kadries did not inform MERS, Southstar, or the Closing agent of the SBA Security Deed on the Property at any time before or during the November 15, 2002 Closing. In fact, the Kadries withheld such information and failed to disclose it on documents which otherwise would have required its disclosure, including but not limited to the Kadries' Uniform Residential Loan Application that they signed at the Closing.

24.

Thereafter, the Southstar Security Deed was assigned to

Plaintiff, BONYM 2002-AR5, in Deed Book 23429, page 124, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "17."

25.

Thereafter, the First Union Security Deed was re-recorded to correct the Property description in Deed Book 24498, page 243, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "18."

26.

Reciting that the Kadries had defaulted on their loan from SBA, SBA apparently conducted a foreclosure sale of the Property under the SBA Security Deed on March 3, 2015, and SBA was apparently the high bidder, bidding $136,500.00. SBA gave itself a Deed Under Power of Sale, which was recorded in Deed Book 24868, page 729, DeKalb County, Georgia records, and a genuine copy is attached as Exhibit "19."

27.

Thereafter, the First Union Security Deed was canceled of record in Deed Book 24904, page 136, and in Deed Book 25248, page 249, DeKalb County, Georgia records, genuine copies of which are attached as Exhibits "20" and "21."

28.

The existence of the Deed Under Power of Sale to SBA (Exhibit "19") gives rise to a continuing threat that SBA may further attempt to transfer or encumber the Property.

29.

Any such purported transfer or grant of an encumbrance or lien on the Property would trigger a multiplicity of claims and suits and threatens to destroy valuable and unique real property rights that BONYM 2002-AR5 holds.

30.

BONYM 2002-AR5 has filed a Notice of Lis Pendens in the records of the Superior Court of DeKalb County, expressly referencing this lawsuit, which involves priority of liens on and title to the Property.

**COUNT I.**

**ACTION FOR EQUITABLE SUBROGATION**

31.

Plaintiff incorporates by reference Paragraphs 1 through 30 above as part of this Count I.

32.

As assignee of the Southstar Mortgage Loan and Security Deed, BONYM 2002-AR5 succeeds to all claims, rights, title, interests, and priorities that MERS and Southstar originally had in the Property under the Southstar Security Deed.

33.

A significant amount of the proceeds from the Closing on the Southstar Security Deed that occurred on November 15, 2002 was advanced to pay off and obtain cancellation of the first priority

9/20/01 CMMC Security Deed. The mortgage loan underlying the second priority 9/20/01 CMB Security Deed already reflected a zero balance at the time of the Closing. An additional $1,227.49 of the loan proceeds were distributed to pay off the remaining 2002 ad valorem tax liability on the Property.

34.

The money was advanced under an express understanding that the Southstar Mortgage Loan and Security Deed was to be secured by the top priority security deed on the Property.

35.

Southstar/MERS reasonably anticipated having the first priority security deed on the Property as a result of the Southstar Security Deed, and instructed the Closing Agent to take all prudent actions to obtain the first priority security deed against the entirety of the Property.

36.

Southstar/MERS had no actual knowledge of any alleged claim to the Property by SBA at the time of the November 15, 2002 Closing.

37.

In fact, the Kadries withheld and/or concealed such information and failed to disclose it on documents which otherwise would have required its disclosure.

38.

Southstar and BONYM 2002-AR5 are not chargeable with inexcusable

neglect.

39.

SBA (and anyone purchasing from SBA) is charged with notice of Southstar’s/BONYM 2002-AR5’s equitable subrogation rights and claims in connection with the Property, as SBA originated and closed on the SBA Security Deed in fifth priority behind the 9/20/01 CMMC Security Deed, the 9/20/01 CMB Security Deed, the First Union Security Deed, and the outstanding 2002 ad valorem tax liability, without SBA paying any money or purporting to do anything to pay off or satisfy any of these prior encumbrances at the time of SBA’s closing, and these three security deeds were of record and uncanceled at the time of SBA’s closing.

40.

SBA (and anyone purchasing from SBA) is not prejudiced by being subordinated to BONYM 2002-AR5's subrogation rights in and to the pre-existing top priority 9/20/01 CMMC Security Deed and the 2002 ad valorem tax liability discharged on the Property.

WHEREFORE, BONYM 2002-AR5 prays as follows:

(a) That this Court subrogate BONYM 2002-AR5 to the top priority positions of the prior 9/20/01 CMMC Security Deed, and the 2002 ad valorem tax liability on the Property, plus interest through the date of judgment;

(b) That this Court subordinate all claims, liens or interests of Defendants SBA and the Kadries to the top lien priority of

BONYM 2002-AR5;

(c) That if (and only if) deemed necessary due to the SBA's current ownership of the Property, that the Court enter an order authorizing and directing the judicial foreclosure sale of the Property under BONYM 2002-AR5's secured interest;

(d) That this Court tax the costs of this action and expenses, including attorneys' fees and other costs, upon SBA; and

(e) That this Court grant such other and further relief as this Court deems just and proper.

**COUNT II.**

**ACTION FOR EQUITABLE LIEN**

41.

Plaintiff incorporates by reference Paragraphs 1 through 40 above as part of this Count II.

42.

As assignee of the Southstar Mortgage Loan and Security Deed, BONYM 2002-AR5 succeeds to all claims, rights, title, interests, and priorities that MERS and Southstar originally had in the Property under the Southstar Security Deed.

43.

Southstar/MERS reasonably believed and anticipated that they were obtaining and bargained for a valid, enforceable first priority security deed encumbering the entirety of the Property. The Kadries, by their acts and silence, misled Southstar into closing on the

Southstar Mortgage Loan and Security Deed and disbursing $302,000.00 under Southstar's belief that it and its successors and assigns would be obtaining a first priority security deed encumbering the entirety of the Property at issue.

44.

The Kadries knowingly accepted and retained the benefits conferred by the closing of the Southstar Mortgage Loan and Security Deed, including but not limited the satisfaction of all prior secured indebtedness corresponding to the two 9/20/01 Mortgage Loans and $1,227.49 in ad valorem tax liability on the Property to which the interests of the Kadries otherwise would have been subject, and the Kadries did nothing to suggest that any other person, including SBA, had any interest in the Property at issue. In fact, the Kadries withheld and/or concealed such information and failed to disclose it on documents which otherwise would have required its disclosure.

45.

SBA (and anyone purchasing from SBA) is charged with notice of Southstar's/BONYM 2002-AR5's equitable rights and claims in connection with the Property, as SBA originated and closed on the SBA Security Deed in fifth priority behind the 9/20/01 CMMC Security Deed, the 9/20/01 CMB Security Deed, the First Union Security Deed, and the outstanding 2002 ad valorem tax liability, without SBA paying any money or purporting to do anything to pay off or satisfy any of these prior encumbrances, and these three security deeds were of record and

uncanceled at the time of SBA's closing.

46.

SBA will have received a direct and material benefit through no legitimate efforts of their own as a result of the payments made by Southstar in satisfaction of the outstanding 9/20/01 CMMC Mortgage Loan and $1,227.49 in ad valorem tax liability on the Property at issue.

47.

To permit SBA to retain the benefit of such payments in satisfaction of the outstanding 9/20/01 Mortgage Loan and $1,227.49 in ad valorem tax liability on the Property at issue would accord SBA an unconscionable windfall.

48.

Under the circumstances, BONYM 2002-AR5 should be accorded a first priority lien in equity on the entire Property, meaning that any interests or liens of SBA in or on the Property would be subject to the equitable lien of Plaintiff.

WHEREFORE, BONYM 2002-AR5 prays as follows:

(a) That this Court determine that BONYM 2002-AR5 has an equitable lien in and to the entirety of the Property, in at least the principal amounts paid by Southstar outlined in ¶ 19, plus interest thereon at the maximum statutory rate;

(b) That such Lien in Equity be accorded priority over the property interests or liens of the SBA;

(c) That this Court determine that any property interests or liens of the SBA are subject to BONYM 2002-AR5's Lien in Equity;

(d) That this Court enter an order authorizing the judicial sale of the Property to enforce BONYM 2002-AR5's Lien in Equity;

(e) That this Court tax the costs of this action and expenses, including attorneys' fees and other costs, upon SBA; and

(f) That this Court grant such other and further relief as this Court deems just and proper.

**COUNT III.**

**ACTION FOR DECLARATORY JUDGMENT**

49.

Plaintiff incorporates by reference Paragraphs 1 through 48 above as part of this Count III.

50.

There is a substantial and continuing controversy between BONYM 2002-AR5 and SBA, and a declaration of rights is both necessary and appropriate to establish that BONYM 2002-AR5 continues to have a foreclosеable right, title, or interest in or lien on the Property despite SBA's foreclosure of the Property under its SBA Security Deed.

51.

By virtue of the facts detailed above, BONYM 2002-AR5 is uncertain and insecure as to its property rights in and to the Property as a result of certain claims or instruments made by SBA concerning its alleged interests in the Property, and the possibility

that SBA may convey or attempt to convey or encumber the Property to future purchasers or lienors.

52.

BONYM 2002-AR5 is uncertain and insecure as to what acts it should take with respect to preservation of its interest in the Property, arising from the Southstar Security Deed, for reason that a determination of the relative interests and priorities, if any, of SBA is essential in determining a number of factors, including the relative rights of the parties in and to the Property, and BONYM 2002-AR5's consideration of whether to foreclose on or otherwise enforce the Southstar Security Deed against the Property.

53.

Specifically, BONYM 2002-AR5 seeks a judicial declaration that it enjoys a foreclosable first lien priority over any interests in the Property by SBA under the doctrine of equitable subrogation.

54.

Alternatively, or in addition thereto, BONYM 2002-AR5 seeks a judicial declaration that it has a foreclosable equitable lien in and to the entirety of the Property, in first priority over any property interests or liens of SBA.

55.

Future action without judicial direction could potentially jeopardize the interests of all parties and could further create a multiplicity of actions or causes of action, including subjecting

unsuspecting purchasers to litigation.

WHEREFORE, BONYM 2002-AR5 prays as follows:

(a) That this Court issue a declaratory judgment establishing that BONYM 2002-AR5 enjoys first lien priority over any interests in the Property by SBA under the doctrine of equitable subrogation;

(b) That this Court issue a declaratory judgment establishing that BONYM 2002-AR5 has an equitable lien in and to the entirety of the Property, in first priority over any property interests or liens of SBA;

(c) That this Court issue a declaratory judgment establishing that any foreclosure that SBA has conducted on this Property was subject to the aforesaid equitable subrogation rights or equitable lien of BONYM 2002-AR5;

(d) That this Court issue such other declarations as to the relative rights and interests of the parties as are appropriate in the circumstances or determined by the Court to be beneficial to the clarification of the relative rights and interests of the parties;

(e) That this Court tax the costs of this action and expenses upon SBA; and

(f) That this Court grant such other and further relief as this Court deems just and proper.

**COUNT IV.**

**CONTINGENT ACTION REGARDING EXCESS PROCEEDS OF FORECLOSURE SALE**

56.

Plaintiff incorporates by reference Paragraphs 1 through 55 above as part of this Count IV.

57.

This is a contingent, alternative claim for the excess proceeds from SBA's foreclosure sale, premised on the theory of unjust enrichment/money had and received, mandamus under 28 U.S.C. § 1361, and a review of agency action under 5 U.S.C. § 702. Under 5 U.S.C. § 551(13), "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." The terms set forth in this definition also include the withholding of relief or property, id. § 551(10)(B), (D), and the grant of money, id, § 551(11)(A).

58.

SBA was the high bidder at its foreclosure sale of the Property under the SBA Security Deed on March 3, 2015, having bid $136,500.00. However, as of the date of the foreclosure sale, upon knowledge, information and belief, the outstanding indebtedness plus sales expenses owed to SBA, and thereby satisfied by virtue of the SBA's foreclosure, was a readily calculable sum totaling only approximately $50,000.00.

59.

This foreclosure sale by SBA therefore generated excess proceeds in a readily calculable amount based on the $136,500.00 winning bid,

less the total amount of the principal indebtedness, accrued interest (if any), loan charges, and expenses of sale. Upon knowledge, information and belief, the total excess proceeds are approximately $86,500.00.

60.

Under both federal and Georgia law, SBA, just like any other person conducting a foreclosure of a mortgage or security deed, is absolutely not allowed to retain these excess proceeds. Rather, upon the completion of the foreclosure sale, the excess proceeds become owed to and must be paid to the holders of the lower priority security deeds and liens and owners extinguished by the foreclosure sale, payable according to their relative priorities. The extinguished lower priority security deeds and liens "attached to the proceeds of the sales in the same manner, in the same order, and with the same effect, as they bound the premises before the sales were made." Markey v. Langley, 92 U.S. 142, 155 (1875); accord, East Atlanta Bank, v. Limbert, 191 Ga. 486, 490, 12 S.E.2d 865, 867-68 (1941).

61.

If (and only if) and to the extent this Court holds that BONYM 2002-AR5 is not entitled to a higher priority than the SBA Security Deed under Counts I-III, and that the 9/20/01 CMMC Security Deed held by BONYM 2002-AR5 was extinguished by virtue of the SBA foreclosure, then BONYM 2002-AR5 would have a clear legal right to all of the excess proceeds generated by SBA's foreclosure, which is a readily

calculable, liquidated amount of approximately $86,500.00. In this particular set of circumstances, BONYM 2002-AR5 would have been in second priority position on the Property behind the SBA Security Deed, with an unpaid loan balance far greater than the amount of the excess proceeds.

62.

SBA has received and retained material benefits from the proceeds of its foreclosure of the SBA Security Deed, the value of which material benefits SBA is are not entitled to retain.

63.

It would violate fundamental principles of justice, equity, and good conscience for SBA to retain the funds or material benefits which were received and have been wrongfully retained by SBA.

64.

If (and only if) and to the extent this Court holds that BONYM 2002-AR5 is not entitled to a higher priority than the SBA Security Deed under Counts I-III, and that the 9/20/01 CMMC Security Deed held by BONYM 2002-AR5 was extinguished by virtue of the SBA foreclosure, then SBA owes BONYM 2002-AR5 the value of the funds or material benefits which SBA received from its foreclosure sale of the Property under the SBA Security Deed, which amount is calculated as the $136,500.00 winning bid, less the total amount of the principal indebtedness, accrued interest (if any), loan charges, and expenses of sale.

WHEREFORE, if (and only if) and to the extent this Court holds that BONYM 2002-AR5 is not entitled to a higher priority than the SBA Security Deed under Counts I-III, and that the 9/20/01 CMMC Security Deed held by BONYM 2002-AR5 was extinguished by virtue of the SBA foreclosure, BONYM 2002-AR5 prays as follows:

(a) That this Court award BONYM 2002-AR5 all excess proceeds of the foreclosure sale under the SBA Security Deed, calculated as the amount $136,500.00 winning bid, less the total amount of the principal indebtedness, accrued interest (if any), loan charges, and expenses of sale – an amount of excess proceeds believed to be approximately $86,600.00 – and that the Court further award interest accruing thereon from the date of sale at the maximum statutory rate;

(b) That this Court tax the costs of this action and expenses, including attorneys' fees and other costs, upon SBA; and

(c) That this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted, this 27th day of February, 2017.

BELOIN, BROWN & BLUM, L.L.C.

By: /s/Charles W. Brown
Charles W. Brown
Georgia State Bar No. 086750
Attorneys for Plaintiff
The Bank of New York Mellon formerly known as The Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee, f/k/a Bank One, National Association as Trustee for Structured Asset Mortgage Investment, Inc. Mortgage Pass-Through Certificates, Series 2002-AR5

2550 Heritage Court
Suite 200
Atlanta, Georgia 30339
(770) 850-1900
(770) 850-1967 (fax)
cbrown@beloinlaw.com

Z:\fsb\FATIC\Kadrie\Federal Complaint.wpd